Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

District of Columbia

_____ Division

|  |  |
|---|---|
| Nicolyn Plummer | Case No. |

Case: 1:24−cv−00779 JURY DEMAND
Assigned To : Nichols, Carl J.
Assign. Date : 3/8/2024
Description: Employ. Discrim. (H−DECK)

*(to be filled in by the Clerk's Office)*

_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Gallaudet University

_____
*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Jury Trial: *(check one)* ☑Yes ☐No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.    The Parties to This Complaint

####    A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Nicolyn Plummer |
| Street Address | Request for address to be placed under seal |
| City and County | |
| State and Zip Code | |
| Telephone Number | 800-421-1220 ext. 914-664-7572 |
| E-mail Address | nplummer790@gmail.com |

####    B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

RECEIVED
MAR - 8 2024
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Defendant No. 1

|  |  |
|---|---|
| Name | Gallaudet University |
| Job or Title *(if known)* | |
| Street Address | 800 Florida Ave NE |
| City and County | Washington |
| State and Zip Code | DC 20002 |
| Telephone Number | (202) 651-5000 |
| E-mail Address *(if known)* | |

Defendant No. 2

|  |  |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

|  |  |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

|  |  |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

C.    **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Gallaudet University |
| Street Address | 800 Florida Ave NE |
| City and County | Washington |
| State and Zip Code | DC 20002 |
| Telephone Number | (202) 651-5000 |

II.    **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

[✓]    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ]    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

[ ]    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[✓]    Other federal law *(specify the federal law)*:

1866 Civil Right law

[ ]    Relevant state law *(specify, if known)*:

[ ]    Relevant city or county law *(specify, if known)*:

### III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☑    Termination of my employment.

☐    Failure to promote me.

☐    Failure to accommodate my disability.

☑    Unequal terms and conditions of my employment.

☑    Retaliation.

☐    Other acts *(specify)*: _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

2/7/2023

C.    I believe that defendant(s) *(check one)*:

☑    is/are still committing these acts against me.

☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☑    race _____

☑    color _____

☐    gender/sex _____

☐    religion _____

☐    national origin _____

☐    age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*

☑    disability or perceived disability *(specify disability)*

See attached (pleading)

E.    The facts of my case are as follows.  Attach additional pages if needed.

See attached (pleading)

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

B.   The Equal Employment Opportunity Commission *(check one)*:

☐   has not issued a Notice of Right to Sue letter.

☑   issued a Notice of Right to Sue letter, which I received on *(date)*   01/09/2024   .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐   60 days or more have elapsed.

☐   less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

United States District Court
For the District of Columbia

| | | |
|---|---|---|
| Nicolyn Plummer | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. |
| | ) | |
| Gallaudet University | ) | |
| 800 Florida Ave | ) | |
| Washington DC 20002 | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

-------------------------------------------------------

**EMPLOYMENT DISCRIMINATION COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

Plaintiff Nicolyn Plummer, representing herself due to being unable to secure legal representation after multiple law firms declined upon hearing her mention her former employer, Gallaudet. She has been denied legal representation from the time of her termination to the present. The Plaintiff has been actively seeking legal counsel to meet the deadline for filing a right to sue. The EEOC recognizes the challenge she faces in obtaining legal representation. Plaintiff hereby brings a civil action against Gallaudet University as an entire institution and alleges as follows:

**Introduction and Summary**

1. Plaintiff Nicolyn Plummer was hired by Gallaudet University (GU) as a Lecturer II/Field Liaison to the Social Work Department on August 8th, 2022. Prior to joining GU, Ms. Plummer served as a Mathematics and Statistics tutor for years at the City University of

1

New York (CUNY), earning numerous awards and special recognitions. All CUNY students mentored by Ms. Plummer successfully passed and graduated with Bachelor's and Master's degrees. Ms. Plummer has been a senior macro social worker for decades, combating ableism in communities with disabilities and addressing intergenerational trauma. She bridged the gap with stakeholders across various entities and implemented accessible services for the d/Deaf communities affected by intergenerational trauma. Ms. Plummer educated junior and high school students on health education and presented in higher education settings. Her recognition for humanitarian contributions to the d/Deaf communities is well-known. She noticed that the career of Black Deaf macro social workers is underdeveloped and wants to bring hands-on experience to the Gallaudet University classroom. Ms. Plummer was hired as a Lecturer II/Field Liaison for the MSW Tenure Track position in August 2022. Ms. Plummer's excellent performance, willingness, and eagerness to serve her students did not protect her from retaliation and racial discrimination at Gallaudet University, which has had a long history of discrimination in the past. Ms. Plummer is a Black woman and was the only Black Deaf woman in the Social Work Department during her tenure.

2. During her employment, GU Ms. Plummer was exposed to racial discrimination and endorsed harassment and blatant discrimination by her biased students.

3. Ms. Plummer herein alleges that the issue arose out of white students in her SWK 715 class titled "Disability Policy: Implications for Deaf and Hard-of-Hearing Populations" belittling her teaching style and calling her names such as "buffoon", "unintelligent", and "retarded" because she had taught a lesson from the textbook "Meanings and History of Disability in Society" chosen by GU as part of her teaching materials. Ms. Plummer discussed with her

mentor Dr. Elizabeth Moore her concerns with the students and the challenges of using Blackboard. At the onset of her tenure, she had also asked non-black staff members if there were any concerns she should have before accepting the position because of Gallaudet University's notoriety for their treatment of black staff and faculty members.

4. Ms. Emilia A. Chukwuma and Dr. Koto Takayama denied Ms. Plummer to join an earlier meeting with SWK 715 that she hosted with the Plaintiff's students virtually regarding their complaint against her.

5. On February 7, 2023, at 6 PM, Plaintiff held a virtual meeting for SWK 715 students to explain the Disability Policy course assignments and other related details. The attendees included Emilia A. Chukwuma, School Director, Dr. Kota Takayama, Program Director from the Social Work Department, and Dean Khadijat Rashid with a hidden camera anonymously without the students' knowledge at the request of Ms. Chukwuma. During this one-hour session, the majority of students, who were predominantly white, were hostile toward Ms. Plummer. This behavior was seemingly encouraged by the administrator's inaction. However, no intervention was made by the administrators during this incident until student Riley Sarah Schultz defended Ms. Plummer.

6. On the specified date, Plaintiff held her inaugural virtual meeting with SWK 715 students. She introduced herself to the class, addressed their concerns, and highlighted modifications made within the blackboard system. Regrettably, the white students' responses were disrespectful and belittling. They described her as "cold, disconnected, distant" and even resorted to derogatory terms such as "mentally retarded". They also questioned whether the Plaintiff was deaf or hard of hearing. The Plaintiff endured these criticisms without retaliation while enduring an hour-long tirade from the white students. Among twenty-five

students, only Riley Sarah Schultz defended the Plaintiff. She reproached her classmates for their disrespectful behavior towards the Plaintiff, despite attempts to address their concerns. She highlighted that they had several weeks to complete their initial assignment, "Perceptive Paper on the Global History of Disability". The Plaintiff clarified that the paper aims to discuss their viewpoint on global attitudes and strategies towards individuals with disabilities.

7.  The Plaintiff perceived these experiences as microaggressions and was subjected to mistreatment leading to unjust termination. Gallaudet University did not suspend Kaley Klecka, a student who allegedly subjected the Plaintiff to racist and derogatory behavior. Gallaudet abruptly terminated the Plaintiff, who was subjected to racial profiling and dehumanization.

### Venue, Jurisdiction and Exhaustion

8.  This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, et seq.

9.  Venue lies in this Court under 42 U.S.C. Sec. 2000e-5(f) and 28 U.S.C. Sec. 1391(b)(2) because this is the jurisdiction in which a substantial part of the events or omissions giving rise to the claim occurred.

10.  The EEOC issued Ms. Plummer a Final Agency Decision on December 11, 2023. This Complaint is being filed within 90 days of the receipt of the Final Agency Decision, under Title VII, 42 U.S. Code § 2000e–16(C).

11.  Ms. Plummer received a termination letter from Gallaudet University on February 11, 2023.

12. The Plaintiff, Ms. Plummer, a Black individual who is hard of hearing and a member of the Deaf community, has been an active advocate for individuals with deafness spectrum, including those who are d/Deaf, DeafBlind, DeafPlus, late-deafened, and cochlear implanted. For decades, the Plaintiff has worked to challenge systemic barriers and social injustices faced by these individuals within both micro and macro social work. The Plaintiff's teaching background spans various levels of hierarchy, culminating in a career transition to the role of Lecturer II/Field Liaison at Gallaudet University in August 2022. However, this new chapter in their teaching profession abruptly ended without due process during Black History Month, February 10, 2023. Ms. Plummer, the Plaintiff, has lodged a discrimination complaint against her employer, Gallaudet University. The complaint stems from her employment as a Lecturer II/Field Liaison from August 2022 to February 10, 2023, and is filed under Title VII of the Civil Rights Act of 1964. Gallaudet University refutes these allegations, insisting that no retaliation discrimination or unjust treatment was leading to unfair termination.

13. Defendant Gallaudet University, federally chartered in 1864, is a bilingual, diverse, multicultural institution of higher education that ensures the intellectual and professional advancement of deaf and hard of hearing individuals through American Sign Language (ASL) and English which employed Plaintiff headquartered in Washington, DC. Gallaudet maintains the tradition of research and scholarly activity and prepares its graduates for career opportunities in a highly competitive, technological, and rapidly changing world.

## Ms. Plummer's Background

14. Ms. Plummer was hired as a Lecturer II/Field Liaison for the Social Work Department from August 2022 to February 2023.

5

15. Before joining Gallaudet, Ms. Plummer was a macro social worker for decades, working to combat ableism in communities with disabilities. She founded the Court Legal Interpreting Coalition to strengthen communication accessibility for deaf and hard-of-hearing litigants, the Deaf Justice Coalition to combat police brutality against the d/Deaf, and the Self-Sufficiency Coalition to alleviate healthcare disparities faced by patients with disabilities. Ms. Plummer collaborated with stakeholders across all entities, including communities, to bridge service gaps for d/Deaf communities. She successfully served individuals across the spectrum of deafness who were recovering from intergenerational trauma. In addition to addressing Deaf trauma, Ms. Plummer taught Deaf individuals with linguistic challenges. She worked collectively with justice stakeholders and others to foster an understanding of Deaf dynamics. Ms. Plummer educated every school entity on health education and was recognized for her numerous humanitarian contributions to the d/Deaf community. Ms. Plummer led the spectrum of deafness to join the policy advocacy roundtable and proposed several bills, such as emergency accessibility, passed through the series of Mayor administrations. She noticed that the career of Black Deaf macro social workers is underdeveloped and wants to make a difference by bringing it to the attention of Gallaudet University School of Social Work. Ms. Plummer learned about the teaching vacancy through her collaboration on a project related to Deaf Trauma Services. Ms. Plummer applied for the MSW Tenure Track position and was hired as a Lecturer II/Field Liaison in August 2022.

16. Ms. Plummer holds a Master of Social Work from New York University.

## **Ms. Plummer's Performance and Accomplishments**

17. The Plaintiff is a proficient instructor and a seasoned professional with decades of experience in social work, advocating against ableism for people with disabilities, including those with a spectrum of deafness. She has successfully taught junior high school students, high school students, and university students without any conflicts. She possesses a blend of education, training, and practical experience that could greatly benefit Gallaudet students.

18. Ms. Plummer presented a workshop titled "Services for Deaf Survivors of Intimate Partner Violence" with Dr. Teresa Crowe, hosted by Gallaudet University's Social Work Beyond the Classroom. She performed many university services as required by Gallaudet's portfolios. Ms. Plummer noticed that newly hired faculty who did not perform university services remained employed. Ms. Plummer's contributions to GU services were discounted and unappreciated.

## **Policies governing Ms. Plummer's Employment at Gallaudet**

19. "The procedures in this policy are intended to provide for equitable employment practices. Gallaudet University is an equal-opportunity employer and does not discriminate on any unlawful basis. All individuals engaged in staff employment activities should be thoroughly familiar with personnel procedures. The Director of Equal Opportunity Programs has the authority to investigate and disapprove a selection decision if any evidence of discrimination or procedural violation exists". The plaintiff wasn't given due process at the time of her termination.

20. "Gallaudet University does not discriminate in its employment or admissions practices or in its educational programs or activities on the basis of sex/gender. Gallaudet University also prohibits retaliation against any person for opposing discrimination or for participating in or refusing to participate in any discrimination investigation or complaint process internally or externally. Reports of misconduct, questions regarding Title IX, and concerns about non-compliance should be directed to a Title IX Coordinator". Based on the exhibits of evidence from the students against the Plaintiff, the Plaintiff made numerous reports, but it wasn't considered.

21. "The U.S. Department of Education's Office for Civil Rights (OCR) is the division of the federal government charged with enforcing compliance with Title IX".

22. "To ensure compliance with federal and D.C. civil rights laws and regulations, and to affirm its commitment to promoting the goals of fairness and equity in all aspects of the educational program or activity, the Institution has developed internal policies and procedures that provide a prompt, fair, and impartial process for those involved in an allegation of sexual harassment or retaliation. Gallaudet values and upholds the equal dignity of all members of its community and strives to respect the rights of the parties in the grievance process during what is often a difficult time for all those involved".

**Race Discrimination at Gallaudet, and Ms. Plummer's Complaints About The Same**

23. Historically, Gallaudet has demonstrated bias against and disproportionately terminated Black Deaf faculty and staff. Among the BIPOC administrators, Black Deaf Faculty are exposed to systemic inequalities and mistreatment. Exhibit 1: Pervasive Institutional Racism in the Deaf Community); Exhibit 2: https://casetext.com/case/squires-v-gallaudet-univ; Exhibit 3: https://casetext.com/case/jackson-v-gallaudet-univ).

24. The disability rights community has often faced accusations of racism, with the details of this case being both extraordinary and incendiary. The absence of a micro-affirmation policy at Gallaudet is concerning. Gallaudet University should be held responsible for using oppressive practices against marginalized employees, which have a more profound and lasting impact on them compared to their white counterparts.

25. The Plaintiff, protected under Title VII of the Civil Rights Act of 1964, has been subjected to racist behavior since the start of her tenure. She was prevented from defending herself against biased students. Plaintiff experienced unwelcome harassment in the workplace, particularly from students who exhibited racist behavior, recorded her without consent during virtual sessions, and mocked her.

26. On February 10, 2023, upon returning to her office from the ASL gathering and Board of Trustees Meet and Greet, the Plaintiff noticed that Gallaudet police officers were stationed at her office door. Officer Robert persistently approached the Plaintiff, merely asking for her name without offering any additional information. His action of kneeling on the Plaintiff's neck for the past nine minutes, while grinning, represented dehumanization and demonstrated a total lack of concern for her welfare. The Plaintiff was consumed with fear and anxiety, suffering psychological, emotional, and physical distress. Gallaudet must be held responsible for the extensive harm caused to the Plaintiff. Gallaudet fostered an unwelcoming atmosphere for black women and other marginalized groups on campus, resulting in lower retention rates, scant representation in leadership roles, and a diminished trust in the institution's, commitment to diversity and inclusion. This further exacerbates

systemic inequalities within the Gallaudet Academic Community, reinforcing the marginalization of black women and men.

27. The Plaintiff reported instances of physical intimidation and defamation to Dr. Elizabeth Moore, including the Ombuds and SARP offices. The Plaintiff requested a transfer of the student to a different academic advisor, but this request was denied. The Plaintiff has consistently experienced mental and physical distress. The Plaintiff has been subjected to an unwelcoming learning environment in SWK 711, where she was continually verbally degraded by a fellow student. This student, who disrespected the Plaintiff, would not have behaved in such a manner with a white faculty member.

28. This was not an isolated incident. SWK 715 student, Kaley Klecka, defamed the Plaintiff's character by making racially insensitive comments after the Meet and Greet meeting (Exhibit 4 & 5). The negative appraisal of the Plaintiff by this student labels her as "unintelligent" "mentally ill" "incompetent buffoon," and "unethical", "incompetent", "disorganized", and "hostile", suggesting that she cannot read and deducts points for different opinions". Gallaudet University did not reprimand the student in question. Additionally, Plaintiff discovered Rosemary Edwards; retaliatory actions against her. Additionally, Plaintiff discovered Rosemary Edward's retaliatory action against her, which involved a demand to remove SWK 715 quizzes from the blackboard. The student's treatment of the Plaintiff was pervasive and biased. Gallaudet University ended the Plaintiff's teaching tenure three days after the "Meet and Greet" event on February 7, 2023, before she could exercise her rights to contest the alleged unjust termination.

29. The Plaintiff has noticed Ryan Parkinson's coercive and bullying tactics towards her. Unexpectedly, after a meeting in January 2023, Ryan demeaned the Plaintiff. The meeting

was to discuss an instance of plagiarism involving Ryan, who had taken the SWK 715 course twice and submitted the same paper titled "Perceptive Paper on the Global History of Disability" This paper was graded in the spring semester of 2022 by Prof. Margaux Delotte-Bennett. The Plaintiff and Ryan had a virtual meeting via Zoom to discuss this issue, during which he agreed to revise his first assignment with content from a disability theoretical framework. The Plaintiff was manipulated and belittled by Ryan, who used his influence over Gallaudet to make a demand for the Plaintiff to be terminated. If not complied, Ryan and his group of eight threatened to take action.

30. Ms. Chukwuma, Dean Rashid, and Dr. Takayama witnessed students ostracizing the Plaintiff, but failed to intervene since they requested to join the meeting. Prior to this meeting,  Ms. Chukwuma held a meeting with SWK 715 without the presence of the Plaintiff and confirmed to the students that she had discussed quizzes and book-related issues with the Plaintiff and encouraged students not to drop the course, especially those expecting to graduate in May 2023. Ms. Chukwuma demeaned Plaintiff in the presence of SWK 715 students instead of speaking with her privately.

31. Dean Rashid addressed the issue of book problems confidently, expressing optimism about finding a solution and soliciting potential solutions. One student, Kaley Alexandra Klecka, proposed a co-teaching arrangement with the Plaintiff. Conversely, Ryan Parkinson, the ringleader for eight students in SWK 715, insisted on an immediate replacement of the Plaintiff. He cautioned that his group would take action if this was not addressed promptly. Ryan expressed that his group had lost confidence in the Plaintiff, criticizing her for a perceived lack of compassion, understanding, warmth, and support. He characterized her as cold, distant, and uncaring.

32. The Plaintiff concluded by expressing gratitude to the SWK 715 students for voicing their concerns. The administrators reminded the students that their time expired due to the meeting being one hour. Afterward, the students exited the Zoom meeting, leaving only the Plaintiff and the administrators. Dean Rashid inquired about the Plaintiff's feelings. The Plaintiff was surprised as she did not expect criticism from students regarding the Blackboard course assignments. She shared her screen on Zoom to display the Blackboard, asserting there were no issues. To defuse the situation, Dean Rashid reached out to Dr. Elizabeth Moore, the mentor of the Plaintiff, and was scheduled to discuss potential co-teaching opportunities. The meeting between Dr. Moore and the Plaintiff was set for February 15, 2023.

33. On February 9, 2023, SWK 715 student Liu questioned the presence of Dean Rashid at the meeting, interpreting it as an indication of potential trouble for the Plaintiff. Tong was hesitant to voice his concerns about racism, fearing retaliation from Gallaudet and possible deportation to his home country. He criticized Gallaudet for their overt discriminatory practices. The Plaintiff validated these concerns, noting that his access to Gallaudet's DEI resources had been limited. Tong was shocked when he learned about the Plaintiff's termination on February 10, 2023.

**Biased, Unfounded Complaint against Ms. Plummer, and Ratifies Discrimination Against Ms. Plummer**

34. "Gallaudet faulted Plaintiff for students' distress[1]; poor peer evaluations that Plaintiff received from her fellow faculty members[2]; class observation report[3]; committee

---

[1] The Plaintiff has been available since the start of her tenure. It is unjust that Gallaudet treated the plaintiff unfairly concerning the distress of students who chose not to use her tutorial services or required academic support. A significant number of students used the plaintiff's services and successfully passed the course.
[2] The Plaintiff has no knowledge of that.
[3] The Plaintiff has no knowledge of that

evaluation report[4]; the decision was made by Dr. Khadijat Rashid and School Director, Emilia Chukwuma without regard to Plaintiff's race, color or disability[5]; offered no evidence substantiating Plaintiff's allegations, decisions regarding her employment were made based on her performance as an instructor and inability to connect with the students.[6]

35. Gallaudet quoted complaints from students with the same recurring themes as the complaints received in the fall 2022 semester[7] students began to threaten to drop Plaintiff's classes even if it meant delaying their graduation by a year[8]; Gallaudet asked Plaintiff to leave[9]; Gallaudet realized that the proper procedure for terminating Plaintiff's appointment early was not followed pursuant[10]; Plaintiff was reinstated as an employee but placed on leave with pay[11]; Gallaudet began to take steps to initiate the severe sanctions process for Plaintiff's dismissal[12]; Faculty Welfare Committee's agreement that dismissal was the appropriate sanction for Plaintiff's performance[13]; Plaintiff has received all benefits and pay through May 12, 2023, 26 Plaintiff has received all benefits and pay through May 12, 2023, 27.

36. Gallaudet quoted "Plaintiff taught several online courses and no faculty member assigned to teach online courses are required to teach online courses on campus[14] ". Gallaudet denies

---

[4] The Plaintiff has no knowledge of that
[5] Reverse Discrimination
[6] The Plaintiff interacted with students from all walks of life.
[7] Recurrent students successfully passed fall 2022 and had opportunity to communicate with Plaintiff in spring 2023
[8] Students had opportunity to meet with Plaintiff with no hesitation.
[9] Gallaudet ordered police officers to harass Plaintiff, and she was simultaneously locked out of email and faculty housing. Plaintiff's constitutional rights were deprived, as she was denied the opportunity to defend herself. Plaintiff received termination letter on February 11, 2023, and Gallaudet utilized coercion tactics while she was navigating on how to file for grievances.
[10] The plaintiff is limited in exercising her constitutional rights.
[11] Gallaudet exploited the Plaintiff without allowing her the right to challenge this unjust treatment. The Plaintiff was under mental duress due to Gallaudet's coercive exploitation tactics. She was subjected to a revolving door policy while trying to assert her rights and resume teaching. The EEO proved unhelpful in this situation.
[12] The plaintiff is unfamiliar with the sanction process and only knows how to file grievances.
[13] Gallaudet allegedly discriminated against the plaintiff, infringing on her constitutional rights.
[14] Plaintiff was required to be campus while teaching online courses.

that Plaintiff was required to report to campus five days per week, especially if she was not expected to teach in person five days per week or other similarly situated employees not in her protected class were not required to report to campus five days a week[15].

37. Gallaudet states SWK 715 student complaints about Plaintiff ramped up, citing her disorganization, technical incompetence, inaccessibility, communication difficulties, lack of disability-related accommodations, and lack of quality instruction; students were also upset that the same issues from the fall had persisted; they were bothered by what they perceived to be unethical teaching by Plaintiff, with her allowing highly charged racial discussions to take place during the class without appropriate moderation and asking the class offensive questions;[16] Grievances, Dr. Elizabeth Moore to replace Plaintiff.

38. "The Plaintiff did not say a single word during this meeting despite her assertion in her charge that she hosted this meeting". They reiterated the same complaints they had been making since the fall about Plaintiff's performance and competence. No comments were made with the implication that she was being attacked based on race, color, or disability". 50 Dr. Rasid's exhibit for this sentence is not attached. After the meeting, Plaintiff mentioned Dr. Elizabeth Moore to co-teach SWK 715. Gallaudet has no knowledge of students referring to Plaintiff in racist or ableist terms.[17]

**Gallaudet states Plaintiff was placed on Administrative Leave based on poor evaluation and poor performance.**

---

[15] Dr. Khadijat Rashid was persistence for Plaintiff to be on campus even when she taught online. Plaintiff noticed that the majority faculty were invisible most of the time.
[16] Summary of Chapter 1.
[17] Gallaudet fully acknowledges that the plaintiff has experienced implicit bias, racist behavior, and microaggressions. She has been treated unfairly by students who showed partiality, particularly when they chose to complain to administrators instead of communicating directly with her.

39. Gallaudet states Plaintiff was not qualified to work in their capacity as an MSW instructor due to her inability to effectively carry out her responsibilities as an instructor or meet the needs of the students in the classroom.[18] She was unable to manage her classroom, use required technology even with substantial support and training, communicate with her students, and ensure that students with disabilities receive approved accommodations.[19] Gallaudet states she engaged in questionable practices that the students found offensive and unproductive, such as engaging in a disability comparison debate which many found to be offensive as a person of a certain race if there was a classroom discussion comparing which race was more desirable.[20] No one of these employees, regardless of their classification, had demonstrated a material inability to achieve even a basic understanding of Blackboard after numerous efforts to support them. None of them had an egregious amount of negative peer and student evaluation right off the bat, and no one of them had students threatening to drop their classes.[21]

40. The Plaintiff is fully qualified and has dutifully fulfilled all responsibilities. She taught four courses in both Fall 2022 and Spring 2023, receiving positive feedback from students. However, some students from the SWK 715 course requested a reduction in assignments

---

[18] The plaintiff is qualified to work as an MSW instructor at Gallaudet. Despite being unjustly accused of not effectively carrying out her responsibilities, she has consistently reiterated assignments in the classroom. She has refined her teaching style and provided additional support to students when necessary

[19] Gallaudet unjustly overlooked the Plaintiff's performance in classroom management and technology improvement. They failed to acknowledge that the Plaintiff went above and beyond her duty, working with students including those with disabilities. The Plaintiff collaborated with OSWD and students utilized her tutorial services. In fact, the Plaintiff connected students to IT for technology assistance.

[20] The content of the disability book can be provocative and emotionally distressing. The characteristic traits depicted in the book may pose a challenge for social work students to understand the difficulties faced by individuals with disabilities.

[21] Gallaudet unfairly undermined the Plaintiff's enhanced use of Blackboard, wrongfully attributing student withdrawals from her course, specifically SWK 715, to her abrupt termination on February 10, 2023. Following her departure, several students withdrew under the new faculty professor who replaced the Plaintiff in SWK 715.

and the abolition of quizzes. These students voiced their complaints to Ms. Chukwuma and Dr. Takayama, who subsequently excluded the Plaintiff from meetings with the students.

41. On Saturday, February 11, 2023, Plaintiff received a termination letter citing concerns with the use of Gallaudet University's asynchronous course platform. Other employees in similar positions, who are not part of my protected class, have also received student complaints and/or struggled with the university's technology but were not terminated. The Plaintiff reached out to Shana Daniel Sever, the Human Resources Manager, and requested the following items: numerical evaluations, complaints, and employment file. However, these items were never received.

42. Ms. Plummer was given 21 days to find a lawyer to dispute against Gallaudet but found herself being rejected by multiple law firms based on Gallaudet's reputation and not being able to receive contingency service from law firms. She ended up filing with the EEOC, but the investigation process took a while and ended up in Gallaudet's favor. Ms. Plummer received a dismissal letter from EEOC on January 9, 2024, and was encouraged to file a right to sue within 90 days.

43. Ms. Plummer invited the witnesses to testify on her behalf in the mediation meeting on April 20, 2023, with the EEOC mediator and Gallaudet, but EEOC had a lengthy meeting with Gallaudet's attorneys and administrators while the last witness and Ms. Plummer waited for the mediator Kevin Coleman's return. Upon returning, mediator Kevin Coleman stated that the last witness was no longer needed, despite Ms. Plummer having informed him days before the mediation that this witness would appear at 12 PM. During the breakout session, Ms. Plummer. reminded Mr. Coleman that the last witness was scheduled

to appear at 12 PM. The investigator decided that Ms. Plummer's case had no merit but encouraged Ms. Plummer to file a right to sue with the federal court within 90 days.

## Impact of the Discrimination

44. Ms. Plummer still has challenges finding a reputable law firm to represent her a year from being terminated and has difficulty securing a job due to background checks being the barrier.

45. The Plaintiff seeks restitution for mental, emotional, and physical distress, racial profiling, exploitation, unfair treatment, biased exclusion from exercising her rights, and hostile experiences.

46. The Plaintiff experienced humiliation, intimidation, and lynching by Gallaudet's officers. Furthermore, the Plaintiff was exploited and forced to endure a revolving door of accusations in an attempt to clear her name after a modern lynching from Gallaudet.

## COURT APPEARANCE

47. The Plaintiff, facing financial hardship and difficulty finding employment due to her unclear name, seeks to eradicate lynching practices. She faces challenges in seeking legal representation to navigate the Federal court system. She requests a virtual appearance with Communication Access Realtime Translation (CART) services and American Sign Language (ASL) services instead of an in-person one, as she cannot financially compensate to travel to DC to testify on her behalf.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Ms. Plummer demands judgment against the Defendant and

prays that the Court:

A. A Declaratory judgment that Defendant's conduct violated Ms. Plummer's rights;

B. Order Ms. Plummer's reinstatement to her position of Lecturer II/Professor Field;

C. Award Ms. Plummer compensatory damages;

D. Award Ms. Plummer all pay she lost as a result of the discrimination;

E. Award Ms. Plummer the out-of-pocket costs and consequential damages she incurred as a result of the Defendant's discrimination against her.

F. Award Ms. Plummer appropriate prejudgment and post-judgment interest;

G. Award Plaintiff an additional amount to account for any taxes she may be called upon to pay about these awards herein;

H. Enjoin the defendant from discriminating against, retaliating against, or harassing Ms. Plummer in any manner.

I. Order the Defendants to conduct an effective assessment of the actual practices and

making use of the Defendants' existing anti-discrimination policies and procedures, to remove a modern lynching practice against a person of color and revise the policy on students' evaluation to ensure that it's not biased based.

J. Order the defendant to consider appropriate disciplinary action against the management officials who engaged in discrimination and/or retaliation against the plaintiff.

K. Posting of notices on defendant's premises notifying employees that defendants have violated the anti-discrimination laws, and that employees who report future violations may not be subject to retaliation.

L. Award such other relief as may be necessary and proper.

The Plaintiff, Nicolyn Plummer, under oath, states: I am the complainant in this case; I have thoroughly read the preceding complaint and am familiar with its content. The information presented is accurate to the best of my knowledge, except for matters based on information and belief, I believe them to be true.

Date: March 6, 2024                                      Nicolyn Plummer
                                                         Complainant

The termination impacted my livelihood, making it difficult for me to find a job for over a year. I seek compensation for the monetary loss and the psychological, emotional, and physical distress caused, and to hold Gallaudet University accountable. The termination impacted my livelihood, making it difficult for me to find a job for over a year. I seek compensation for the monetary loss and the psychological, emotional, and physical distress caused. This includes transportation reimbursement for spring 2023 following my termination on February 10, 2023, as the tickets were non-refundable. Gallaudet University should be held accountable for causing a major crisis in my life. The relief sought should make me whole for the damages caused by Gallaudet University. (see attached pleading)

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        03/06/2024

Signature of Plaintiff

Printed Name of Plaintiff     Nicolyn Plummer

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address