## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NICOLYN PLUMMER, | |
| Plaintiff, | |
| v. | Case No. 24-cv-779 (AHA) (GMH) |
| GALLAUDET UNIVERSITY, | |
| Defendant. | |

### MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

Plaintiff Nicolyn Plummer was hired as a lecturer at Defendant Gallaudet University to teach social work for the 2022–23 academic year. Concerns arose about her performance, culminating in her termination early in the spring semester. Ms. Plummer, proceeding *pro se*, sued Gallaudet raising due process, breach of contract, emotional distress, negligence, and defamation claims. Gallaudet moves to dismiss, arguing that Ms. Plummer has failed to state any plausible claim for relief. The undersigned agrees that Ms. Plummer's due process claim—her only federal claim—should be dismissed because Gallaudet is not a state actor.

The question, then, is what to do with the remaining state law claims. The Court does not have federal question jurisdiction over those claims—the only form of original jurisdiction invoked by the complaint. Supplemental jurisdiction allows the Court to exercise jurisdiction over state law claims. But the general rule is that courts decline to do so when all federal claims are dismissed. Both parties ask the Court to exercise supplemental jurisdiction, however, because Gallaudet's motion is fully briefed, this case has been pending for nearly two years, and the state law issues are neither novel nor complex. And although Ms. Plummer never invoked diversity jurisdiction, it appears that the parties are completely diverse and that Ms. Plummer could allege

damages exceeding $75,000.  The undersigned therefore agrees that exercising supplemental jurisdiction may be warranted.

The undersigned thus proceeds below to address Ms. Plummer's state law claims.  Unfortunately for plaintiff, the bulk of her state law claims fare no better than her due process claim. Her breach of contract claim, however, clears the low bar of Rule 12(b)(6).  Ms. Plummer alleges that the parties had a valid contract defined at least in part by the University's Faculty Handbook, the Faculty Handbook obligated Gallaudet to provide her with certain procedural rights before terminating her, Gallaudet failed to provide her with those procedural protections, and Gallaudet's breach resulted in damages.  At this early stage, those allegations are sufficient.

Accordingly, the undersigned recommends granting Gallaudet's motion in part, dismissing all but Ms. Plummer's breach of contract claims under Rule 12(b)(6), and denying Gallaudet's motion to dismiss Ms. Plummer's claim for breach of contract.[1]

## I.    BACKGROUND[2]

Created by federal charter in 1864, Gallaudet University "is a private university for deaf and hard of hearing students" in Washington, D.C.  *Gallaudet University*, https://gallaudet.edu [https://perma.cc/6A9U-FZFD]; *see also* ECF No. 1 at 10.  Ms. Plummer is a social worker with nearly 20 years of experience and a former tutor at the City University of New York.  ECF No. 1 at 7; ECF No. 37 at 6–7.  Gallaudet hired Ms. Plummer as a non-tenure track lecturer for the nine-

---

[1] The relevant docket entries for purposes of this Report and Recommendation are (1) Ms. Plummer's second amended complaint (ECF No. 32), (2) Gallaudet's motion to dismiss (ECF No. 33), (3) Ms. Plummer's opposition to Gallaudet's motion to dismiss (ECF No. 37), (4) Gallaudet's reply in support of its motion to dismiss (ECF No. 41), (5) Gallaudet's supplement to the motion to dismiss (ECF No. 57), and (6) Ms. Plummer's response to Gallaudet's supplement to the motion to dismiss (ECF No. 60).

[2] Neither the operative complaint nor Gallaudet's motion to dismiss include a sufficient explanation of the factual background of this case.  Much of the factual background presented here is therefore drawn from other materials submitted in this case.  Such information is included as only as background and the motion to dismiss is evaluated based on the factual allegations set forth in the relevant submissions.

month term comprising the 2022–23 academic year.  ECF No. 12-1 at 9.  As a lecturer, she was responsible for teaching four courses in social work per semester at Gallaudet.  *See* ECF No. 1 at 20.

As a lecturer with a "temporary appointment," Ms. Plummer alleges that Gallaudet's Faculty Handbook provided her with certain procedural rights if she was terminated "before the end of [her] term."  ECF No. 37-1 at 52–53; *see also* ECF No. 37 at 5.  In particular, Gallaudet's Faculty Handbook appears to entitle her to "a statement of charges, framed with reasonable particularity," and "the right to be heard initially by the elected Faculty Adjudication Committee," with detailed procedural requirements for the hearing and decisionmaking process.  ECF No. 37 at 52–55.

Early in Ms. Plummer's first semester at Gallaudet, students began to complain about her performance.  ECF No. 1 at 17–18.  Most of these complaints related to her ability to communicate expectations and other information to students both in person and over Blackboard, the course webpage.  *See* ECF No. 12-1 at 10–11.  Some of these student complaints, Ms. Plummer claims, veered into the derogatory and insulting, including references to Ms. Plummer as "mentally retarded, mentally ill, unintelligent, and an incompetent buffoon."  ECF No. 37 at 8 (internal quotation marks omitted).  Despite Gallaudet's efforts to salve students' concerns and improve Ms. Plummer's performance, the rift between Ms. Plummer and her students continued to grow into her second semester at Gallaudet.  ECF 12-1 at 10–11.

Ultimately, Gallaudet sent Ms. Plummer a letter on February 10, 2023, informing her that she had been terminated, effective immediately.  *Id.* at 11; *see also* ECF 37-7.  According to Ms. Plummer, she was not provided notice or a hearing before being terminated, as provided in the Faculty Handbook.  *See* ECF 37 at 4–5.  In response, Ms. Plummer wrote a letter to the Faculty Adjudication Committee, among others at Gallaudet, requesting that Gallaudet follow the

procedures set forth in the Faculty Handbook.  ECF No. 37-2.  According to Gallaudet's first mo-tion to dismiss, "[s]hortly thereafter, Gallaudet identified the proper process for suspending an instructor's appointment prior to the end of a contract, and reinstated Ms. Plummer through May 2023, the end of her contractual term, placing her on a paid administrative leave and compensating her through the end of her contract."  ECF No. 12-1 at 11; *see also* ECF No. 1 at 18.

Unsatisfied with that result, Ms. Plummer filed a complaint with the Equal Employment Opportunity Commission.  ECF No. 1 at 21.  The EEOC took no action and issued Ms. Plummer a right to sue letter on December 11, 2023.  ECF No. 1-17; *see also* ECF No. 1 at 17.  The EEOC denied Ms. Plummer's request for reconsideration on January 31, 2024.  ECF No. 1-16.

On March 8, 2024, Ms. Plummer sued Gallaudet in federal court, proceeding *pro se*.  Her first complaint expressly invoked Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 *et seq.*, and alleged claims for racial and disability discrimination, unequal terms of employment, retaliation, and unlawful termination, among others.  ECF No. 1 at 3–4, 9.  On June 1, Ms. Plum-mer filed an amended complaint, which was docketed on June 3, ECF No. 9; that same day Gal-laudet  moved to dismiss Ms. Plummer's original complaint.  Gallaudet moved to dismiss the amended complaint on June 17.  ECF No. 12.  Six months later, on January 9, 2025, Ms. Plummer filed a document styled as the second amended complaint, which in substance was a response to Gallaudet's second motion to dismiss.  ECF No. 29.

Before the Court could address Gallaudet's second motion to dismiss, Ms. Plummer sought leave to file a second amended complaint.  ECF No. 30.  The Court granted that motion on Febru-ary 3, 2025, noting that "Plaintiff is advised that the amended complaint that she files on February 24, 2025, will supersede her previous filings and therefore must include every factual allegation she wishes the Court to consider."  Minute Order (Feb. 3, 2025).

On March 11, 2025, Ms. Plummer filed her second amended complaint, which is now the operative complaint. ECF No. 32. It omits any mention of Title VII, discrimination based on any protected trait, or any federal civil rights or employment law. *See generally id.* Instead, the complaint alleges five "Counts" and four "Legal Claims." *Id.* at 2. The "Counts" include breach of contract, deprivation of due process, "Emotional Distress," negligence, and defamation. *Id.* The "Legal Claims" repeat essentially the same claims but omit the defamation claim. *Id.* Ms. Plummer seeks economic, noneconomic, and punitive damages, and declaratory relief. *Id.* at 10–11.

On March 25, 2025, Gallaudet again moved to dismiss each of Ms. Plummer's claims for failure to state a claim, the dispositive motion which is currently before the Court. ECF No. 33. Ms. Plummer filed an opposition to the motion to dismiss on May 16, to which she attached nine additional exhibits, including Gallaudet's Faculty Handbook and her letter to the Faculty Adjudication Committee in response to her termination. ECF No. 37-1–37-9. Gallaudet filed its reply on June 5. ECF No. 41. This case was then randomly referred to the undersigned for a report and recommendation. Minute Order (July 25, 2025). The undersigned held a hearing on the motion to dismiss on December 8, 2025. Minute Entry( Dec. 8, 2025).[3]

---

[3] Ms. Plummer has also appealed to the D.C. Circuit the Court's denial of her motions to appoint counsel. ECF No. 44 (notice of appeal). Generally, the "filing of a notice of appeal" divests the district court of jurisdiction "over those aspects of the case involved in the appeal." *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 58 (1982) (per curiam)). But the appeal of "a non-appealable interlocutory order does not divest the district court of jurisdiction." *Nwosu v. Four Seasons Hotels Ltd.*, No. 24-cv-25, 2024 WL 4332605, at *3 (D.D.C. Sep. 27, 2024) (quoting *Yah Kai World Wide Enters., Inc. v. Napper*, No. 11-cv-2174, 2016 WL 1112978, at *1 (D.D.C. Aug. 12, 2016)); *accord United States v. Bodye*, 182 F. Supp. 3d 1, 2 (D.D.C. 2016); *McKesson HBOC, Inc. v. Islamic Repub. of Iran*, 315 F. Supp. 2d 63, 66 (D.D.C. 2004); *see also DeFries*, 129 F.3d at 1302–03 ("Courts have carved out a few narrow exceptions to this rule, such as . . . an interlocutory appeal from a non-appealable order."). And the D.C. Circuit has recognized that an order denying a "motion for appointment of counsel" is "not an appealable final order," *Rodriguez v. Chertoff*, No. 07-5189, 2007 WL 3527757, at *1 (D.C. Cir. Aug. 22, 2007) (per curiam), or appealable under the "collateral order doctrine," *Ficken v. Alvarez*, 146 F.3d 978, 980 (D.C. Cir. 1998). *See* Order, *Plummer v. Gallaudet University*, No. 25-7089 (D.C. Cir. Dec. 19, 2025) (dismissing Ms. Plummer's appeal because "denial of appellant's motions for appointment of counsel is neither a final decision, *see* 28 U.S.C. § 1291, nor an order that qualifies for immediate appeal under the collateral order doctrine," but withholding the mandate until seven days after the time to petition for rehearing expires). Thus, because Ms. Plummer has appealed a non-appealable order, the Court retains jurisdiction over her case and may adjudicate Gallaudet's motion to dismiss.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see* Fed. R. Civ. P. 12(b)(6).  The Court must accept as true the well-pleaded factual allegations, *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), construe those allegations "in the light most favorable to the plaintiff[]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016), and draw all "reasonable inferences" in favor of the plaintiff, *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016).  Although the plaintiff need not make "detailed factual allegations," the complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).  At bottom, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

That said, *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Court therefore "consider[s] a *pro se* litigant's complaint in light of all filings, including filings in response to a motion dismiss" and "attached exhibits."  *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (internal quotation marks omitted) (quoting *Brown v. Whole Foods Mkt Grp.*, 789 F.3d 146, 152 (D.C. Cir. 2015)).  Still, like all litigants, a *pro se* plaintiff "must comply with the Federal Rules of Civil Procedure."  *Coulibaly v. Pompeo*, 318 F. Supp. 3d 176, 183 (D.D.C. 2018).  Thus, although "a *pro se* complaint must be construed liberally, *pro se* plaintiffs must still show that the court has subject matter jurisdiction and state a claim for relief."  *McGary v. Ravuindra*, No. 19-cv-3249, 2020 WL 4335613, at *3 (D.D.C. July 28, 2020).

### III.    DISCUSSION

Ms. Plummer's complaint asserts causes of action for breach of contract, deprivation of due process, emotional distress, negligence, and defamation. *See* ECF No. 32 at 6–10. Gallaudet moves to dismiss each of these claims under Rule 12(b)(6). The undersigned agrees that Ms. Plummer's due process claim fails because Gallaudet University is not a state actor subject to the Due Process Clause. Although the Court lacks original jurisdiction over the remaining claims, the undersigned recommends that the Court exercise supplemental jurisdiction over them. And the undersigned recommends denying Gallaudet's motion to dismiss Ms. Plummer's breach of contract claim but granting the motion to dismiss her other state law claims.

### A.    Ms. Plummer's Due Process Claim

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." The "deprivation of life, liberty or property" without "notice and opportunity for hearing" violates due process. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). Ms. Plummer alleges that Gallaudet University "fail[ed] to provide adequate notice" and an opportunity to be heard before terminating her in "violation of her right to due process guaranteed by the Fourteenth Amendment." ECF No. 32 at 7; *see* ECF No. 37 at 2. Gallaudet responds that Gallaudet "is a private university," not a "state government or municipality" bound by the Fourteenth Amendment. ECF No. 33-1 at 3.

As an initial matter, the Fourteenth Amendment does not apply to Gallaudet, a federally-chartered university in the District of Columbia. That is because the Fourteenth Amendment applies only to the states, not the District of Columbia, *Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954), and not to the federal government, *Robinson v. Pilgram*, No. 20-cv-2965, 2021 WL 5987016, at *9 (D.D.C. Dec. 17, 2021), *aff'd*, No. 22-5001, 2022 WL 3009621 (D.C. Cir. July 28, 2022) (per curiam). Because Ms. Plummer is *pro se* and argues that Gallaudet is subject to the

Due Process Clause as a "a federally chartered institution," ECF No. 37 at 2, the undersigned "construes" her claim "as arising under the Fifth Amendment's due process guarantees, which applies to the Federal government," *Doe v. Dep't of Health & Hum. Servs.*, 85 F. Supp. 3d 1, 12 n.5 (D.D.C. 2015).

Even so, "[t]he Fifth Amendment is a restraint on the federal government, not on private citizens." *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1093 (D.C. Cir. 1980). Consequently, "private citizens," including private universities, "acting in their private capacities, cannot be guilty of violating due process rights." *Avila v. CitiMortgage, Inc.*, 45 F. Supp. 3d 110, 122 (D.D.C. 2014) (quoting *Canadian Transp. Co.*, 663 F.3d at 1093). Thus, "to state a claim under the due process clause of the Fifth Amendment, a plaintiff must allege that the alleged deprivation was a product of state action." *Da'Vage v. Dist. of Columbia Hous. Auth.*, 583 F. Supp. 3d 226, 240 (D.D.C. 2022). The question therefore is whether Gallaudet is a government actor bound by the Fifth Amendment.

The "line between state action subject to [constitutional] scrutiny and private conduct (however exceptionable)" is not always bright. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). At either extreme, the distinction between the two is self-evident: getting arrested by law enforcement is state action; getting cut off by another citizen in traffic is not. But the line grows hazier towards the center of that spectrum. The "Supreme Court 'has articulated a number of different factors or tests in different contexts'" to identify government action. *Scottsdale Cap. Advisors Corp. v. FINRA*, 678 F. Supp. 3d 88, 102 (D.D.C. 2023) (quoting *Lugar v. Edmundson Oil Co.¸*457 U.S. 922, 939 (1982)), *rev'd on other grounds sub nom. Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024). Relevant here, the Supreme Court has instructed that a government-created corporation may be, but is *not necessarily*, a government

actor.  *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995); *see also Dep't of Transp. v. Ass'n of Am. R.Rs.*, 575 U.S. 43, 53–55 (2015).

In *Lebron*, the Court held that Amtrak, a congressionally created passenger rail service structured like a private corporation, was bound by the First Amendment.  513 U.S. at 397.  The Court explained that when "the Government creates a corporation by special law, for the further-ance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment."  *Id.* at 399.  The Court expanded on that reasoning in *Association of American Railroads*, reaffirming that Amtrak was a government actor not subject to the private non-delega-tion doctrine because "[t]he political branches created Amtrak, control its Board, define its mis-sion, specify many of its day-to-day operations, have imposed substantial transparency and ac-countability mechanisms, and, for all practical purposes, set and supervise its annual budget."  575 U.S. at 55.

As the D.C. Circuit has explained, "*Lebron* sets forth a three-part standard to determine whether a government-created corporation is part of the government for constitutional purposes."  *Herron v. Fannie Mae*, 861 F.3d 160, 167 (D.C. Cir. 2017).  "[A] corporation is 'part of the Gov-ernment' for constitutional purposes when:  '(1) the Government creates the corporation by special law, (2) for the furtherance of governmental objectives, and (3) retains for itself permanent author-ity to appoint a majority of the directors of that corporation.'"  *Id.* (citation modified) (quoting *Lebron*, 513 U.S. at 400).  Since government-created corporations usually tend to serve govern-ment objectives, the key often is "the final *Lebron* criterion: permanent government control."  *Id.*; *see also U.S. Inst. for Peace v. Jackson*, 783 F. Supp. 3d 316, 342–345 (D.D.C. 2025) (surveying the "spectrum" of government control over government chartered corporations), *appeal docketed*,

No. 25-5185 (D.C. Cir. May 22, 2025); *Ass'n of Am. R.Rs.*, 575 U.S. at 55 (emphasizing "the practical reality of federal control and supervision" over Amtrak).

Here, the lack of any allegation supporting an inference that Gallaudet is a state actor is fatal to Ms. Plummer's claim. The closest Ms. Plummer comes is her observation that Gallaudet is "a federally chartered institution." ECF No. 37 at 2. But federal charter is only one (usually nondispositive) factor in the state actor analysis. *See Herron*, 861 F.3d at 167. Chief Justice Marshall recognized as much over 200 years ago. *See Trs. of Dartmouth Coll. v. Woodward*, 17 U.S. 518, 638 (1819) ("From the fact, then, that a charter of incorporation has been granted, nothing can be inferred, which changes the character of the institution, or transfers to the government any new power over it."). More recently, the D.C. Circuit held that Fannie Mae is not a government actor for purposes of *Bivens* claims even though it was created by Congress. *Herron*, 861 F.3d at 167–70. And perhaps most on point, other courts in this Circuit have held that George Washington University and Howard University—like Gallaudet, both federally-chartered universities—are not government actors. *See Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 119 (D.D.C. 2018); *Freeman v. Howard Univ. Coll. of Med.*, No. 21-cv-02191, 2022 WL 4289640, at *5–6 (D.D.C. Sept. 16, 2022). So the bare allegation that Gallaudet is federally chartered is insufficient to plausibly allege that Gallaudet is a government actor.

Gallaudet's organic act confirms that Gallaudet is not a government actor. Recall that in *Lebron*, the Court found a sufficient degree of government control because the government had "permanent authority to appoint a majority of the directors of" Amtrak's board. 513 U.S. at 399. Like Amtrak, Gallaudet's organic act provides that "Gallaudet University shall be under the direction and control of a Board of Trustees." 20 U.S.C. § 4303(a)(1). The Board is "composed of twenty-one members." *Id.* And sure enough, like Amtrak, three of those members are appointed

by the government—here, Congress.  *Id.* § 4303(a)(1)(A).  But the remaining eighteen are elected by the Board without any government involvement.  *Id.* § 4303(a)(1)(B), (a)(3).  And critically, a quorum of nine is required for the Board "to transact business."  *Id.* § 4303(a)(3).  So even on a bare quorum, the three public members would not have the "majority" needed to control the Board, and through the Board, to control Gallaudet.  *See Lebron*, 513 U.S. at 399.  Accordingly, the undersigned cannot conclude that "the federal government exercises permanent control over" Gallaudet.  *See Herron*, 861 F.3d at 168; *cf. Brentwood Acad*, 531 U.S. at 299–300 (holding that an athletics association was a state actor because 84% of its members were "public schools represented by their officials acting in their official capacity").

That conclusion is bolstered by *Becker v. Gallaudet University*, 66 F. Supp. 2d 16 (D.D.C. 1999).  Indeed, *Becker* bears a striking resemblance to this case.  There, four former nontenured faculty members sued Gallaudet for alleged due process violations.  *Id.* at 17–18.  Judge Hogan, applying *Lebron*, explained that "private corporations are government actors when the corporation is (1) created by the government by a special law; (2) for the furtherance of governmental objectives; (3) where the government retains for itself permanent authority to appoint a majority of the board of directors."  *Id.* at 20.  He then noted that "the first two prongs are satisfied": Gallaudet was created by Congress and serves government objectives.  *Id.* at 20.  But he recognized that only three of the twenty-one board members were appointed by the government, "which is obviously far from a majority."  *Id.* at 20–21 (citing 20 U.S.C. § 4303(a)(1)(A)(ii)–(ii) & (a)(1)(B)).  That, he concluded, "is a strong indication that the federal government does not exercise sufficient control over Gallaudet for the University to be deemed a government actor."  *Id.* at 20–21.  He thus held "that Gallaudet is not an all-purpose government actor subject to federal constitutional

restraints." *Id.* at 21.  The makeup of Gallaudet's Board has not changed since *Becker*, and the undersigned sees no reason to depart from *Becker*'s conclusion.[4]

The inquiry, however, does not end there.  Even if an entity is not a government actor, the Supreme Court has held that its actions may nevertheless be imputed to the government in certain circumstances.  Ultimately, the touchstone is the same:  whether "there is such a 'close nexus between the [government] and the challenged action' that seemingly private behavior 'may be fairly treated as that of the [government] itself.'"  *Brentwood Acad.*, 531 U.S. at 295 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  Applying that touchstone, the Court has held that "a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity."  *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (citations omitted).  Thus, even the actions of a private entity may transgress constitutional bounds, if they are "fairly attributable" to the government.  *Brentwood Acad.*, 531 U.S. at 295.

The problem again is that Ms. Plummer alleges no facts that would support the inference that the government is responsible for her termination.  Given that this inquiry is case specific— that is, the question is whether Ms. Plummer's termination is "fairly attributable" to the

---

[4] Neither party's brief addresses Gallaudet's organic act.  Thus, at the hearing in this case, the undersigned ordered Gallaudet to submit a supplement to its motion to dismiss addressing whether Gallaudet's organic act has changed since *Becker* and allowed Ms. Plummer to file a response.  ECF No. 56.  Gallaudet's supplement observes that "the composition of the Board of Trustees in relation to public (three members) versus nonpublic members (18 members) is the same" as it was in *Becker*.  ECF No. 57 at 1.  Ms. Plummer was provided an opportunity to respond but was warned that her response "must be limited to addressing only the subject matter of Gallaudet's supplement."  ECF No. 59.  In her response, she concurs that "according to publicly available information on the institution's website, three members of the board of trustees are congressional appointees."  ECF No. 60 at 7.  Her response also includes additional factual allegations and legal arguments, some related to the government actor issue and others related to her other claims.  *See* ECF No. 60 at 4–12.  Although the Court is sympathetic to Ms. Plummer's *pro se* status, Ms. Plummer had ample notice that her response was to be limited only to responding to Gallaudet's supplement, which addressed only the statute that defines the structure of Gallaudet's Board.  The undersigned therefore disregards the factual allegations and legal arguments that are beyond that limited scope.

government, *Brentwood Acad.*, 531 U.S. at 295—the Court necessarily must rely on the facts alleged to conduct it. And Ms. Plummer has "not alleged that any agency or official of the federal government was involved in [her] termination or in any of the decisions leading up to [her] termination." *See Becker*, 66 F. Supp. 2d at 22. She does not allege, for instance, that a government official ordered or requested her termination, that Congress conditioned the provision of federal funds on her termination, that either Congress or another government official required Gallaudet to enforce a policy that led to her termination, or any other plausible connection between her termination and the government. Nor does Ms. Plummer allege that Gallaudet is undertaking an exclusively public function. Indeed, "[c]ourts in this Circuit have held that providing higher education is not an *exclusively* public function." *Woytowicz*, 327 F. Supp. 3d at 116. Without any factual allegations allowing the undersigned to impute responsibility to the government, the undersigned cannot conclude that Ms. Plummer's termination is the result of government action.

The undersigned therefore cannot find the government is responsible for Ms. Plummer's termination. And because the Fifth Amendment is a limit only on the government, Ms. Plummer has not plausibly alleged facts that support her claim for relief under the Due Process Clause. *See Da'Vage*, 583 F. Supp. 3d at 240. The undersigned therefore recommends dismissing her due process claim. The undersigned further concludes that dismissal with prejudice is warranted. For the reasons explained above, she could not plausibly allege facts sufficient to show that Gallaudet is a government actor subject to the Due Process Clause because Gallaudet is not a government actor. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1340 (D.C. Cir. 2015) (explaining that dismissal with prejudice is warranted where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" (quoting *Belizan v. Hershon*, 434 F.3d 579 583 (D.C. Cir. 2006)).

### B.    Jurisdiction Over Ms. Plummer's State Law Claims

Ms. Plummer also asserts claims for breach of contract, negligence, emotional distress, and defamation—all of which arise under state law.  These claims therefore do not fall within the Court's federal question jurisdiction, *see* 28 U.S.C. § 1331, the only grant of jurisdiction invoked by the complaint, ECF No. 32 at 4.  Nor does the complaint allege the citizenship of the parties or the amount in controversy, as would be required for diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1).  And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).[5]

Nevertheless, the Court may have supplemental jurisdiction over the state law claims.  Supplemental jurisdiction allows the Court to exercise jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Claims form part of the same case or controversy if they

---

[5]  The complaint includes several other oblique references to federal law.  None suffice to sustain federal question jurisdiction.  First, the jurisdiction section of the complaint mentions 42 U.S.C. § 1983 without explanation.  ECF No. 32 at 4.  To the extent Ms. Plummer seeks to assert a distinct Section 1983 claim, it fails for the same reason as her due process claim.  *See Lindke v. Freed*, 601 U.S. 187, 194–95 (2024) ("As [Section 1983's] text makes clear, this provision protects against acts attributable to a State, not those of a private person.").  Second, in her complaint Ms. Plummer references her proceedings before the EEOC and, as discussed in more detail below, her opposition to the motion to dismiss includes the allegation that Gallaudet tolerated a racially hostile work environment in the context of her claim for intentional infliction of emotional distress.  ECF No. 32 at 5; ECF No. 37 at 7–8.  Her complaint, however, does not state any cause of action arising under any federal employment or civil rights law.  And under the "well-pleaded complaint rule," a claim "'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon federal law.'"  *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (citation modified) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).  Instead, her complaint very clearly asserts five "Claims for Relief" and four "Legal Claims," none of which includes federal employment or civil rights claims.  ECF No. 32 at 6–10.  The absence of such claims is especially conspicuous given that her first complaint expressly invoked "Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, et seq." and that she checked the boxes on the cover sheet of the complaint indicating that she asserts claims for discrimination based on race and disability.  ECF 1 at 4, 9.  Those claims dropped out of her amended complaint even though she was repeatedly warned that her amended complaint "will supersede her previous filings and therefore must include all the factual allegations she wishes the Court to consider."  Minute Order of January 9, 2025; *accord* Minute Order of February 3, 2025.  These "passing mention[s]" of federal law thus do not create federal question jurisdiction under the well-pleaded complaint rule.  *See Park S. Neighborhood Corp. v. Vesta Mgmt. Corp.*, 80 F. Supp. 3d 192, 196 (D.D.C. 2015).  Finally, Ms. Plummer asserts a claim for defamation.  ECF No. 32 at 8.  Although the First Amendment often provides a defense to defamation claims, it "is settled law" that federal question jurisdiction cannot be created solely "on the basis of a federal defense."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citation omitted).  Her defamation claim therefore does not arise under federal law.

"derive from a 'common nucleus of operative fact,'" meaning that "the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Taylor v. District of Columbia*, 626 F. Supp. 2d 25, 28 (D.D.C. 2009) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). In other words, there must be "a link or overlap between the facts" relevant to each claim. *See Chelsea Condo. Unit Owners Ass'n v. 1815 A. St., Condo. Grp., LLC*, 468 F. Supp. 2d 136, 141 (D.D.C. 2007).

Here, all of Ms. Plummer's claims arise from the same event—her termination by Gallaudet. As discussed below, her breach of contract and emotional distress claims are based on the same alleged conduct as her due process claim—Gallaudet terminating her without notice or a hearing. *See Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) ("[W]here 'the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious.'" (quoting *Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir. 1995)). Similarly, her negligence claim alleges that Gallaudet "exploited [its] position of authority to intentionally deprive the plaintiff of her right to a due process hearing," ECF No. 32 at 8, which, whatever the merits of that claim, implicates the same underlying facts. And Ms. Plummer's defamation claim concerns two statements made in the lead-up to her termination. ECF No. 37 at 8–9. She alleges these statements "result[ed] in [her] abrupt termination without warning or due process," *id.* at 10, meaning that her termination forms part of the basis for the "actual pecuniary loss" she must show to prevail on her defamation claim, *see Franklin v. Pepco Holdings, Inc.*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012). Thus, her state law claims share a "common nucleus of operative fact" with her federal due process claim. *See Taylor*, 626 F. Supp. 2d at 28.

Still, the Court "may decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c). In exercising that discretion, the Court must "consider 'judicial economy, convenience, fairness,

and comity.'"  *Nat'l Collegiate Preparatory v. D.C. Charter Sch. Bd.*, No 19-cv-1785, 2019 WL 7344826, at *5 (D.D.C. Dec. 19, 2019) (quoting *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005)).  One ground on which the Court may decline to exercise supplemental jurisdiction is that the "court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In other words, "in the usual case in which all federal-law claims are dismissed before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 417 (D.C. Cir. 2014) (citation modified) (quoting *Shekoyan*, 409 F.3d at 424).

Here, though, the undersigned concludes that this is the unusual case that may warrant the Court exercising supplemental jurisdiction despite dismissal of all federal claims.  To start, neither party seeks dismissal for lack of jurisdiction.  Ms. Plummer—who "is entitled to select the forum in which [s]he wishes to proceed," *Araya*, 775 F.3d at 413—chose to file her complaint in federal court.  And although consent does not create jurisdiction, Gallaudet expressly requested that the Court exercise supplemental jurisdiction when presented with the possibility of dismissal for lack of jurisdiction at the hearing on its motion to dismiss.  FTR Gold Recording, December 8, 2026, at 3:56–57 PM.  Gallaudet argued, and the undersigned agrees, that judicial efficiency favors the exercise of supplemental jurisdiction—Gallaudet's motion to dismiss is fully briefed, Ms. Plummer has amended her complaint twice already, and this case has been pending for nearly two years.  Moreover, as explained below, Ms. Plummer's state law claims do not present complex or "novel issues of state law."  *Araya*, 775 F.3d at 417; *see Phillips v. Del Toro*, No. 11-cv-2021, 2022 WL 1597583, at *5 (D.D.C. May 19, 2022) (finding that "comity does not demand dismissal" where "the state-law issues are neither novel nor complex").  And ultimately, the decision whether to exercise supplemental jurisdiction is entrusted to "the sound discretion of the district court."

*Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 65 (D.D.C. 2019) (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995)).  These considerations thus favor exercising supplemental jurisdiction.

That conclusion is bolstered by the fact that Ms. Plummer likely could refile in federal court by invoking diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).  Ms. Plummer represents that she lives in, and is thus likely a citizen of, New York.  *See* FTR Gold Recording, December 8, 2025, at 4:17–18 PM; *Saadeh v. Farouki*, 107 F.3d 52, 56 (D.C. Cir. 1997) (explaining that an individual is a "citizen" of the state where they are domiciled).  Gallaudet, on the other hand, is likely a citizen of the District of Columbia because its "principal place of business" is in the District and essentially all its activities take place within the District.  *See* 28 U.S.C. § 1332(c)(1); *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 364 (4th Cir. 2020) (holding that federally-chartered corporations are at least citizens of the state where their principal place of business is located); *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (holding that that federally-chartered corporations lack state citizenship, and thus destroy diversity jurisdiction, "unless the corporation's activities [are] sufficiently 'localized' in one state").  And although Ms. Plummer makes no allegations that would support a precise quantification of her damages, it seems likely that she could plead damages exceeding $75,000 because she seeks compensatory damages for three years of "lost wages," plus damages for emotional distress and punitive damages for her tort claims.  ECF No. 32 at 10; *see Nat'l Consumers' League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 72 (D.D.C. 2014) (explaining that a plaintiff may aggregate the value of multiple claims against a single defendant).

In short, dismissing this case likely would serve only to delay resolution of this case, not protect comity or the interests of the parties or the Court.  The undersigned therefore concludes

that "judicial economy, convenience, fairness, and comity" all favor the exercise of supplemental jurisdiction in this case. *See Nat'l Collegiate Preparatory*, 2019 WL 7344826, at *5 (quoting quoting *Shekoyan*, 409 F.3d at 423). Accordingly, the undersigned recommends exercising supplemental jurisdiction over Ms. Plummer's state law claims.

### C.    Ms. Plummer's State Law Claims

Ms. Plummer alleges claims for breach of contract, "Emotional Distress," negligence, and defamation. ECF No. 6–8. Gallaudet moves to dismiss each of those claims under Rule 12(b)(6). ECF No. 33. For the following reasons, the undersigned concludes that Ms. Plummer's breach of contract claim survives, but Ms. Plummer's other state law claims should be dismissed.

#### 1.    Breach of Contract

Ms. Plummer first alleges that her termination violated her contract with Gallaudet. "Under District of Columbia law, 'a party asserting breach of contract must prove four elements: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *Galvin v. Ruppert Nurseries, Inc.*, 341 A.3d 1165, 1171 (D.C. 2025) (quoting *CorpCar Servs. Hous., Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1244–45 (D.C. 2024)). "[T]o survive a Rule 12(b)(6) motion to dismiss," however, "it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 319 (D.D.C. 2015).[6]

Ms. Plummer's breach of contract claim hinges on Gallaudet's Faculty Handbook. Ms. Plummer alleges that the Faculty Handbook "explicitly outline[s] procedures guaranteeing employees" certain protections and that she "was terminated . . . in direct contradiction of Gallaudet's policies." ECF No. 37 at 4–5. In other words, "Gallaudet violated its own written procedures,"

---

[6] Neither party disputes that District of Columbia law governs Ms. Plummer's state law claims. *See* ECF No. 33-1 at 3; ECF No. 32 at 9.

she claims, "thereby breaching its contractual obligations to" her. *Id.* at 5. The first question therefore is whether Gallaudet's Faculty Handbook provided Ms. Plummer with contractual rights.

District of Columbia "law recognizes that 'under certain circumstances, the provisions of an employment handbook may constitute an implicit contractual limitation upon'" otherwise at-will employment. *Clampitt v. Am. Univ.*, 957 A.2d 23, 35 (D.C. 2008) (quoting *Howard Univ. v. Lacy*, 828 A.2d 733, 739 n.7 (D.C. 2003)) (collecting cases). A plaintiff may plead an implied-in-fact contract by alleging facts that "raise[] a plausible inference that the [employer] intended to be bound" by an employee handbook. *Mawakana v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 340, 349–351 (D.D.C. 2015). But a handbook may preclude the formation of an implied-in-fact contract by "disclaim[ing] the establishment of contractual obligations and explicitly provid[ing] that employment may be terminated at-will." *Grove v. Loomis Sayles & Co., L.P.*, 810 F. Supp. 2d 146, 149 (D.D.C. 2011).

Here, Ms. Plummer has plausibly alleged that the Faculty Handbook constitutes part of the employment contract between Gallaudet and Ms. Plummer. Ms. Plummer alleges that the Faculty Handbook "outline[s] procedures guaranteeing employees" certain procedural rights and that "Gallaudet violated its own written procedures, thereby breaching its contractual obligations to" Ms. Plummer. ECF No. 37 at 5. Construed liberally, those allegations support the inference that the Faculty Handbook was intended to define the contractual relationship between the parties. And at the pleading stage, Ms. Plummer need only "raise[] a plausible inference that the University intended to be bound" by the Handbook. *See Mawakana*, 113 F. Supp. 3d at 351.

Nor does Gallaudet point to any language in the Faculty Handbook that "disclaims the establishment of contractual obligations." *See Grove*, 810 F. Supp. 2d at 149. On the contrary, the very first full page of the Faculty Handbook provides that "[t]he University Faculty Handbook

is a statement of policies and procedures, *including conditions of employment*." ECF No. 37-1 at 3 (emphasis added). And the Handbook similarly assures faculty that the "University Faculty Handbook and the University Faculty Bylaws serve as the governance documents for University faculty." *Id.* Far from a disclaimer, these provisions support the inference that Gallaudet understood the Faculty Handbook to govern the contractual relationship between the parties. The undersigned therefore finds that Ms. Plummer has plausibly alleged that the Faculty Handbook created enforceable contractual obligations.

The next question is whether Ms. Plummer has plausibly alleged that Gallaudet breached those obligations. To review, at the pleading stage, "it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." *Badwal*, 139 F. Supp. 3d at 319; *accord Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015). *Badwal* is instructive. There, the "plaintiff allege[d] that he 'had a contractual relationship with Defendant Board of Trustees' and that 'by its treatment of Plaintiff, Defendant breached its contractual promises to him'" by terminating his employment. *Badwal*, 139 F. Supp. 3d at 319 (quoting the complaint). Noting that "the pleading standard for a breach of contract claim is not high," this Court held that those allegations were sufficient. *Id.*

Ms. Plummer has plausibly alleged a breach of her contract with Gallaudet. Like in *Badwal*, she alleges that Gallaudet "failed to uphold its contractual obligations" by terminating her, which "caused damage to the Plaintiff." ECF No. 32 at 6. Moreover, her opposition to the motion to dismiss alleges that "[t]he employee handbook . . . of Gallaudet University explicitly outline[s] procedures guaranteeing employees" certain rights before being terminated, including notice and a hearing before a neutral decisionmaker (the existence of a contract). ECF No. 37 at 5. She contends that she was "terminated . . . in direct contradiction to Gallaudet's policies," including

that she "was not given notice of any formal charges, nor was she provided a hearing or opportunity to be heard, as guaranteed . . . [by] the university's own employment policies and procedures" (breach).  ECF No. 37 at 4.  And she alleges that "as a result of this termination, [she] has been unemployed for over three years" and that she "surrendered an eighteen-year career in social work to join Gallaudet" (causation and damages).  ECF No. 37 at 6–7.  These allegations meet "the liberal pleading standard for contract claims in this jurisdiction." *Pernice v. Brown*, 183 F. Supp. 3d 84, 88–89 (D.D.C. 2016).

Gallaudet offers no response to the merits of Ms. Plummer's allegations.  Instead, despite elsewhere responding to allegations made in Ms. Plummer's opposition, *see e.g.*, ECF No. 41 at 8, Gallaudet insists that here the Court must consider "only the allegations in the complaint" and blind itself to allegations that appear in Ms. Plummer's opposition, ECF No. 41 at 5.  That contention runs headlong into the longstanding principle that *pro se* pleadings are to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106).  To be sure, generally courts consider only the allegations that appear in the complaint.  *See Ashcroft*, 556 U.S. at 678; *see also* Fed. R. Civ. P. 8(a)(2).  But the Supreme Court and the D.C. Circuit have long allowed *pro se* complaints to be "bolstered" by "more specific allegations in documents attached to the complaint and in later filings." *Erickson*, 551 U.S. at 94.  The D.C. Circuit has instructed that the Court must "consider a *pro se* litigant's complaint in light of all filings, including filings responsive to a motion to dismiss" such as the "opposition to the motion to dismiss and attached exhibits." *Ho*, 106 F.4th at 50.  Indeed, the D.C. Circuit has "held that a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss." *Brown*, 789 F.3d at 152 (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).  And here,

Ms. Plummer, who is *pro se*, included allegations that bolster her claim for relief in her opposition and attached the Faculty Handbook as an exhibit. ECF No. 37 at 4–7; ECF No. 37-1. This Court should not ignore allegations and materials that the Supreme Court and D.C. Circuit have held should be considered.

Accordingly, the undersigned concludes that Ms. Plummer has plausibly alleged facts in support of her breach of contract claim sufficient to overcome the low bar of Rule 12(b)(6).

### 2.    The Remaining Claims

Ms. Plummer also asserts claims for emotional distress, negligence, and defamation. For following reasons, the undersigned agrees with Gallaudet that these claims should be dismissed.

To begin, Ms. Plummer claims that Gallaudet "intentionally and recklessly" caused her "emotional distress." ECF No. 32 at 7. The undersigned understands this to be a claim for intentional infliction of emotional distress ("IIED"). To plead an IIED claim under D.C. law, "a plaintiff must demonstrate extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress." *Munoz v. Bd. of Trs. of Univ. of D.C.*, 590 F. Supp. 2d 21, 27 n.7 (D.D.C. 2008). That is a high bar. It requires conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Purcell v. Thomas*, 928 A.2d 699, 711 (D.C. 2007) (quoting *Smith v. District of Columbia*, 882 A.2d 778, 794 (D.C. 2005). And that standard is especially "demanding" "[i]n the employment context." *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997). Here, Ms. Plummer's complaint fails to allege that Gallaudet subjected her to such conduct. Her complaint instead cryptically claims that Gallaudet "coerc[ed] the plaintiff under distressing circumstances" and took other "actions [that] intentionally and recklessly inflicted harm." ECF No. 32 at 7. Those allegations are "far too vague" to plausibly allege a claim for

relief. *See Thomas v. D.C. Law Enforcement*, No. 23-cv-106, 2023 WL 417976, at *1 (D.D.C. Jan 25, 2023).

Her opposition clarifies that the allegedly tortious conduct was "terminating Plaintiff without due process, while tolerating a racially hostile environment." ECF No. 37 at 7–8. This allegation, too, is insufficient to state a claim for IIED. For one, the "discharge of an employee is not considered extreme and outrageous conduct sufficient to state an intentional infliction of emotional distress claim." *Langer v. George Washington Univ.*, 498 F. Supp. 2d 196, 200 (D.D.C. 2007); *accord Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1172 (D.C. 1997). So the allegation that she was wrongfully terminated is insufficient to state a claim. And the allegation of a racially hostile work environment does not get that otherwise insufficient claim over the line. True, in certain cases, the "[c]reation of a hostile work environment by racial or sexual harassment may . . . constitute a prima facie case of intentional infliction of emotional distress." *Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984). But a hostile work environment means that the plaintiff's "employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive." *See Robinson v. District of Columbia*, 23-cv-03823, 2024 WL 4722157, at *6 (D.D.C. Nov. 8, 2024) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)). And Ms. Plummer nowhere alleges that she was the victim of such treatment. The only allegation of any racial discrimination is the allegation that there is a "history of unjust terminations of Black staff" at Gallaudet. ECF No. 37 at 6. Troubling as that may be, nowhere in the operative complaint or her opposition to the motion to dismiss does she allege that *she* was terminated based on her race. And regardless, her perfunctory allegations fall far short of alleging that her workplace was "'permeated with discriminatory intimidation, ridicule, and insult' that was 'sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.'"

*Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 7 (D.D.C. 2013) (some internal quotation marks omitted) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)).  So she has not alleged that she "was subjected to unwelcome harassment" pervasive and outrageous enough to constitute IIED.  *See Robinson*, 2024 WL 4722157, at *3 (citation omitted).  Accordingly, she has failed to state an IIED claim.

Next, Ms. Plummer asserts a claim for defamation.  ECF No. 32 at 8.  "To state a claim for defamation under District law, a plaintiff must 'show that (1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement [met the requisite standard]; and (4) publication of the statement caused the plaintiff special harm or the statement was actionable as a matter of law irrespective of special harm.'"  *US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 30 (D.D.C. 2022) (alteration in original) (quoting *Robertson v. District of Columbia*, 269 A.3d 1022, 131 (D.C. 2022)).  Most fundamentally, the plaintiff must "allege specific defamatory comments by pleading the time, place, content, speaker, and listener of the alleged defamatory matter."  *Von Kahl v. Bureau of Nat'l Affairs, Inc.*, 934 F. Supp. 2d 204, 217 (D.D.C. 2013).  Ms. Plummer claims that she was the victim of two allegedly defamatory statements.  Gallaudet argues that neither of these statements suffices to state a defamation claim.  ECF No. 41 at 8.  The undersigned agrees.

First, Ms. Plummer claims that statements "made by one of defendant's students are alleged to include derogatory term[s] such as 'mentally retarded,' 'mentally ill,' 'unintelligent,' and an 'incompetent buffoon.'"  ECF No. 37 at 8.  But Ms. Pummer does not allege that Gallaudet was the "speaker" of these statements, *see Von Kahl*, 934 F. Supp. 3d at 217, or that Gallaudet "published the statement[s] without privilege to a third party," *see US Dominion, Inc.*, 600 F. Supp. 3d

at 30.  Instead, she alleges only that they were "made by one of defendant's students."  ECF No. 37 at 8.  Nor does Ms. Plummer allege any theory by which Gallaudet could be held vicariously liable for an unidentified student's statements.  *See Convit v. Wilson*, 980 A.2d 1104, 1114 (D.C. 2009) (outlining vicarious liability).  Moreover, these statements appear to reflect the student's opinion—unfounded, unfair, and offensive as it may be—about Ms. Plummer's performance, expressed via "the sort of 'imaginative expression' and 'rhetorical hyperbole' that typifies non-actionable opinion."  *Florio v. Gallaudet Univ.*, 619 F. Supp. 3d 36, 46 (D.D.C. 2022), *aff'd*, 119 F.4th 67 (D.C. Cir. 2024) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *see also Farah v. Esquire Magazine*, 736 F.3d 528, 539 (D.C. Cir. 2013) (recognizing that protected opinion may be expressed through "strong rhetoric and salty language"); *Malec v. City of Joliet*, 22-cv-5312, 2023 WL 3200098, *7 (N.D. Ill. May 2, 2023) (stating, "Courts have repeatedly held that referring to a person as 'dumb' or 'stupid' is a nonactionable expression of opinion because such statements cannot be objectively verified and are inherently subjective" and collecting cases).

Second, Ms. Plummer alleges that "[t]he Dean falsely accused [Ms. Plummer] of misleading her and further attributed a false co-teaching letter to [Ms. Plummer] regarding collaboration with Dr. Elizabeth Moore."  ECF No. 37 at 9.  But under District of Columbia law, allegations that "do not describe the substance of the alleged defamatory statements or identify the respect in which they were false" are insufficient to "state a plausible claim of defamation."  *Bell v. First Invests. Servicing Corp.*, 256 A.3d 246, 258 (D.C. 2021).  In *Bell*, for instance, the D.C. Court of Appeals held that the allegations that the defendant "'made false statements to credit reporting agencies regarding the instant Repossession' and that [the plaintiff] suffered harm to her reputation and her credit standing' as a result" were too conclusory.  *Id.* (quoting the complaint). So it is here.  Ms. Plummer does not plead the "substance of the alleged defamatory statements" beyond providing a

vague description of their general subject matter.  *See Bell*, 256 A.3d at 258.  Nor does she plausibly

allege facts supporting the remaining elements.  For instance, she does not allege any facts showing

publication to a third party beyond the conclusory allegation that "statements were widely dissem-

inated beyond privileged internal channels," including to "colleagues, students, and professional

network affiliates."  ECF No. 37 at 9.  The undersigned therefore concludes that Ms. Plummer's

defamation claim must be dismissed under Rule 12(b)(6).

      Finally, Ms. Plummer asserts a claim for negligence.  "To state a claim for negligence under

District of Columbia law, Plaintiff must allege facts sufficient to prove the existence of a duty,

breach of that duty, causation, and damages."  *Jia Di Feng v. See-Lee Lim*, 786 F. Supp. 2d 96, 106

(D.D.C. 2011).  Here, Ms. Plummer's allegations are plainly insufficient to state a claim.  Her

complaint includes two sections with the headings "Negligence," with only one sentence in each

section:  (1) "The defendant exploited their position of authority to intentionally deprive the plain-

tiff of her right to a due process hearing"; and (2) "As outlined in D.C. code section 12-301, the

defendant owed a duty to the plaintiff, breached that duty, and consequently caused damage."  ECF

No. 32 at 8–9.  The first allegation lacks any logical relation to any of the elements of negligence.

And even assuming that the statute cited in the second allegation imposed a duty of care (it appears

merely to set the limitations period for various torts), the second allegation is nothing more than

the "[t]hreadbare recital[] of the elements of the cause of action."  *See Iqbal*, 556 U.S. at 678.

Finally, the "Factual Background" section of the complaint states, "The negligence exhibited by

the defendant in failing to address complaints raised by the plaintiff directly resulted in significant

economic harm, leaving her unemployed since the inception of wrongful termination and violation

of due process that began on February 10, 2023."  ECF No. 32 at 6.  This, too, fails to allege

sufficient factual content.  It does not explain why Gallaudet had a duty to address Ms. Plummer's

complaints (or even what those complaints were), how Gallaudet failed to address those complaints and how that failure breached the standard of care, or the causal relationship of that breach to Ms. Plummer's termination. Her opposition, moreover, makes no mention of her negligence claim. Accordingly, Ms. Plummer fails to state a claim for negligence.[7]

\*　　　\*　　　\*　　　\*　　　\*

To summarize: the undersigned concludes that Ms. Plummer failed to state a claim for a violation of the Due Process Clause because Gallaudet is not a state actor. Although that means her only federal claim should be dismissed, the undersigned recommends exercising supplemental jurisdiction over Ms. Plummer's remaining claims for the reasons stated above. Her breach of contract claim passes muster under Rule 12(b)(6) because she plausibly alleges that Gallaudet violated its contractual obligations by failing to provide her with procedural protections guaranteed to her by the Faculty Handbook. But she has not plausibly alleged facts to support her claims for IIED, defamation, or negligence.[8]

---

[7] Mystifyingly, Gallaudet chose to address Ms. Plummer's negligence claim with only one sentence tucked away in a footnote in its motion to dismiss, *see* ECF No. 33-1 at 1 n.1 ("While the SAC lists five counts, including a 'negligence' claim, it appears that claim repeats the same allegations as Ms. Plummer's due process claim, so Gallaudet will not address it."). Nowhere does Gallaudet make any independent argument that Ms. Plummer fails to state a negligence claim. In a stroke of luck, "under Federal Rule of Civil Procedure 12(h)(1), failure to state a claim upon which relief can be granted is not a defense that can be waived if a party fails to include it in a responsive pleading or other papers filed with the Court." *Seeger v. Dep't of Defense*, 306 F. Supp. 3d 265, 282 (D.D.C. 2018). And "[w]here, as here, the failure to state a claim is patent, 'it is practical and fully consistent with plaintiffs' rights and the efficient use of judicial resources' for the Court to dismiss the action *sua sponte*." *Jaeger v. United States*, No. 06-cv-625, 2006 WL 1518938, at \*1 (D.D.C. 2006) (quoting *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990)). Moreover, while Gallaudet's argument leaves much to be desired, its motion to dismiss does ask the Court to "dismiss Plaintiff's Second Amended Complaint against it entirely," which presumably includes Ms. Plummer's negligence claim. ECF No. 33. Thus, although the undersigned is reluctant to reward Gallaudet's halfhearted approach to briefing this claim in its motion, especially given that Gallaudet is represented by counsel while Ms. Plummer is *pro se*, the undersigned concludes that judicial efficiency favors addressing Ms. Plummer's negligence claim with the rest of her complaint.

[8] Gallaudet also seeks dismissal with prejudice of Ms. Plummer's state law claims. ECF No. 41 at 9. The undersigned does not find that Gallaudet has met the "high standard" for dismissal with prejudice of Ms. Plummer's IIED, defamation, and negligence claims. *See Aenergy, S.A. v. Repub. of Angola*, 678 F. Supp. 3d 147, 172 (D.D.C. 2023). As to each of those claims, it is at least "possibl[e]" that Ms. Plummer could allege additional facts to "cure the deficienc[ies]" the undersigned has identified. *See Abbas*, 783 F.3d at 1340.

## IV.    CONCLUSION

For the forgoing reasons, the undersigned recommends **GRANTING IN PART** Gallaudet's motion to dismiss (ECF No. 33), **DISMISSING WITH PREJUDICE** Ms. Plummer's due process claim and **DISMISSING** Ms. Plummer's claims for intentional infliction of emotional distress, defamation, and negligence, and **DENYING** Gallaudet's motion to dismiss to the extent it seeks to dismiss Ms. Plummer's breach of contract claim.

\*       \*       \*       \*       \*

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objection.  The parties are further advised that failure to file timely objection to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendations.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date:  January 13, 2026

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE